Cowin, J.
Defendant Trimount Bituminous Products Company (“tenant”) leased Commercial premises on Cherry Hill Drive in a Danvers office park from plaintiff Thomas J. Flatley, d/b/a The Flatley Company (“landlord”) for a five-year term pursuant to a lease dated February 2, 1989 (“the lease”). The landlord has brought suit claiming that the tenant has failed to pay rent due since July 31, 1991. The tenant maintains that the landlord breached a lease provision that entitled the tenant to terminate the lease and that the tenant properly did so. The landlord now moves for summary judgment.
BACKGROUND
According to the undisputed facts, the lease contains a provision giving the tenant the right to terminate (with 60 days prior written notice) in the event the cafeteria located in the building known as 5 Cherry Hill Drive (“the cafeteria”) ceased total operations for more than twenty (20) consecutive business days (“Section 41”).[1] Said Section 41 provides in pertinent part as follows:
In the event the cafeteria located in the Building known as 5 Cherry Hill Drive, Danvers, MA, ceases total operations for more than twenty (20) consecutive business days at any time during the term of this Lease, . . . then LESSEE shall have the right to terminate this Lease provided it gives LESSOR sixty (60) days prior written notice.
Claiming that such a cessation of operations had occurred, the tenant sent the landlord a letter by certified mail dated January 25, 1991 (“January 25 letter”), whereby the tenant exercised its termination right under Section 41. By letter, the landlord responded that the cafeteria had not ceased total operations for more than twenty consecutive business days and that it therefore intended to hold the tenant to its lease obligations. Further, the landlord informed the tenant that the January 25 letter did not comply with the 60-day notice provision of Section 41 of the lease.
For purposes of this motion, the parties agree that the cafeteria ceased total operations as of the close of business of December 21, 1990. They also agree that coffee and juice of some sort were available beginning January 21, 1991[2] and that, starting January 24, 1991, soup, sandwiches and beverages were added at lunchtime. The issue before the Court, thus, is whether the cafeteria had ceased total operations for more than twenty consecutive business days as of January 25, 1991 when the tenant sent the landlord its termination notice. The calculation of twenty consecutive business days requires a determination of whether Martin Luther King Day, celebrated on January 21 in 1991, was a business day or a legal holiday.
DISCUSSION
To ascertain whether the cafeteria had ceased total operations for more than twenty consecutive business days as of January 25, 1991, it is necessary to determine which day is twenty consecutive business days after December 21, 1990. As stated above, the resolution of the question depends upon a determination of the status of Martin Luther King Day. The landlord claims that Martin Luther King Day is exempted from the calculation as it was not a “business” day; the tenant argues otherwise.
In 1985, Massachusetts denominated the third Monday in January a legal holiday to commemorate the birthday of Martin Luther King, Jr. See M.G.L.c. 4, s. 7, cl. Eighteenth, as amended by St. 1985, c. 451, s. 1. The same was accomplished as a national matter beginning with January 20, 1986. See 5 U.S.C. s.6103(a) and 36 U.S.C. s. 169j. Thus, pursuant to both state and federal law, the third Monday in January in 1991, January 21, was a legal holiday, not a business day. Although some businesses choose to be open on legal holidays, that fact does not change the nature of the day. Accordingly, January 21, 1991, a legal holiday, is excluded from the calculation of tweniy consecutive business days.
In addition to the fact that state and federal law mandated that Martin Luther King Day, January 21, 1991, was a legal holiday, this interpretation is consistent with the one other provision in the lease where the term “business day” is used. Section 12, concerning utilities, provides in pertinent part as follows:
Normal business days are all days except Saturday, Sunday, New Year’s Day, Memorial Day, July 4th, Labor Day, Thanksgiving Day, Christmas Day (and the following day when any such day occurs on Sunday) and such other national or state holidays. [Emphasis supplied.]
“Such other national or state holidays” includes Martin Luther King Day. Thus, the only provisions in the lease which refer to “business days” are consistent.
*131 The tenant argues that interpretation of whether Martin Luther King Day is to be considered a holiday or business day should be influenced by the practice of the parties. In this regard, he draws the Court’s attention to the fact that the tenant’s business was open on Martin Luther King Day, 1991. In addition, the cafeteria itself had been open for business on Martin Luther King Day in the immediately preceding years, suggesting that the landlord considered the day a business day. Given the clarity of the written instrument in this case, the Court will not examine the practice of the parties. That is a factor to be considered when the provisions of the document are ambiguous. There is no ambiguity here, assuming that the words are given their normal meaning. The particular practice of the parties is certainly not a sufficiently powerful factor to disregard the clear language of the lease. Had the parties wished to do so, it would have been an easy matter to add language in Section 41 providing that the cafeteria were to be open on Martin Luther King Day.
Further, the principal purpose of the parties in entering into this contract was to lease space. If the lease is to be terminated, there should be a clear expression of intent to do so. Absent express language to that effect, the lease should be interpreted to avoid termination.
With the designation of Martin Luther King Day as a holiday, the twentieth consecutive business day after December 21, 1990 was January 23,1991. The tenant maintains that even if the twentieth consecutive business day were January 23, 1991, the cafeteria was not in operation on January 24, 1991. Since Section 41 gives the tenant the right to terminate only if the cafeteria “ceases total operations,” it is necessary to resolve whether the cafeteria had ceased total operations on January 24, 1991.
On January 24, 1991, coffee and juice were available at about six a.m. Soup, sandwiches and beverages were added at lunchtime. Once more, the Court’s decision must be informed by the language used by the parties. The choice of the words “ceases total operations” is presumed to be meaningful. The clause suggests the concept of offering nothing at all. To cease total operations is to stop doing business. Such was not the case here. It is true that the food offered on January 24, 1991 does not fulfill one’s normal expectations of a cafeteria and is, in fact, much more limited than the menu at the cafeteria prior to December 21, 1990. More significant, however, is the fact that the quantum of food sold on January 24 cannot be characterized as a total ceasing of operations.
Again, the Court must be guided by the language chosen by the parties. They could have provided a different standard. The choice of the words “ceases total operations” was intended to enable the landlord to avoid being locked in to a particular level of services. If food and beverages were available when the tenant needed them, it is sufficient for purposes of Section 41. The interpretation of the phrase is not governed by the past practice of the landlord. Under that phrase, he could reduce the services, as long as he did not eliminate them altogether.[3] There was no cessation of total operations. Accordingly, the cafeteria did not cease total operations for more than twenty days and the defendant tenant did not have the right to terminate the lease.[4] Thus, the plaintiff landlord is entitled to summary judgment.
ORDER
For all of the foregoing reasons the plaintiffs motion for summary judgment is ALLOWED.

Nhe cafeteria was operated by independent third parties, not by Flatley.

The parties do not agree as to the nature and extent of the availability of the coffee and juice. The resolution of this factual dispute is not necessary for the Court’s resolution of the instant motion.

fy'he defendant argues that, assuming that service of simply coffee and juice was not sufficient, the service of soup and sandwiches at lunchtime was a breach of the agreement because soup and sandwiches were only available after 20 and [3]A days. The reasonable meaning of the lease is to interpret Section 41 in terms of complete days.

The landlord also argues that even if the tenant did have the right to terminate, the termination notice sent was deficient. Although it is not necessary to resolve this issue in view of the Court’s interpretation of Section 41, the tenant’s notice of termination was deficient. It did not specify the date on which the tenant planned to vacate. This vague notice was certainly not what the lease termination provision contemplates as it provided the landlord with inadequate notice of when the premises would be available. Indeed, defendant tenants after giving the notice, did not leave for approximately seven months.